IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter comes before the Court on Defendant Thomas E. Coates's motion to suppress evidence, (Doc. 599). Coates seeks to suppress "any evidence obtained in violation of his rights under the Fourth Amendment of the United States Constitution, as well as any and all fruits of said evidence, including, but not limited to, any of his statements." (*Id.*). More specifically, Coates seeks to suppress $135 in cash and $20 in "buy money" that police officers seized from him during a March 15, 2006 search of a drug house, as well as unspecified evidence potentially seized on March 3, 2005, and April 6, 2006. (*Id.*). For the reasons set forth below, the Court **DENIES** Coates's motion to suppress.

**I. BACKGROUND**

Coates is one of twenty defendants facing trial for his alleged involvement in the Short North Posse, an alleged criminal organization that operated the Short North area of Columbus, Ohio, from 2005 until 2014. Coates faces a single count of RICO conspiracy and is scheduled to stand trial with the second group of defendants, beginning July 11, 2016.

1

Coates filed a motion to suppress evidence under the Fourth Amendment on May 29, 2015. (*Id.*). He requested that this Court suppress "any evidence or statements law enforcement obtained during searches and/or seizures made of Mr. Coates and/or his property" on March 15, 2006 (which corresponds to Overt Act Number Nineteen); March 3, 2005 (which corresponds to Notice of Intent to Rely on Evidence Crime Number One); and April 6, 2006 (which corresponds to Notice of Intent to Rely on Evidence Crime Number Nine). (*Id.*). All of the dates Coates mentioned were taken from the Superseding Indictment (Doc. 300) and the Government's Notice of Intent to Rely on Evidence (Doc. 565), and all of the dates correspond to dates on which Coates allegedly committed acts in furtherance of the conspiracy, not to dates on which searches or seizures necessarily occurred. With respect to the March 15, 2006 search, associated with Overt Act Number Nineteen, Coates specified the evidence he hoped to suppress—namely, "$135.00 in cash and $20.00 in 'buy money' [police seized] from Mr. Coates' pants pocket." (Doc. 599). Coates failed to name any evidence he hoped to suppress from the other two dates he identified or, for that matter, to allege how any searches or seizures that occurred on those dates may have violated the Constitution.

Coates initially requested an evidentiary hearing "to further develop the issues submitted" in his motion to suppress. (*Id.*). Nevertheless, during the Court's October 8, 2015 status conference regarding discovery, Coates's counsel indicated that she might consent to the Court resolving the motion on the parties' briefing alone, presumably because the Government had corrected an earlier, inadvertent omission from its discovery productions. Coates's counsel confirmed that her client consented to the Court resolving the motion to suppress on the pleadings alone via email on October 14, 2015.

## II.  STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  To comply with the Fourth Amendment, law enforcement personnel generally must obtain a warrant, supported by probable cause, from a neutral and detached judicial officer before searching people or their houses, papers, and effects for evidence of criminal wrongdoing.  *Riley v. California*, 134 S. Ct. 2473, 2482 (2014); *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011).  These requirements "guarantee[] the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their discretion."  *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 613-14 (1989) (quotation omitted).  Searches and seizures conducted without a warrant are presumptively unreasonable.  *King*, 131 S. Ct. at 1856.  Nevertheless, because "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" the warrant requirement is subject to several exceptions.  *Id.* (quotation omitted).

Defendants who seek to suppress evidence allegedly obtained in violation of the Fourth Amendment bear the burden of proof.  *See, e.g.*, *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." (quotation omitted)); *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991) ("In the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search.").  The Sixth Circuit has made clear that this burden of proof extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014) ("The defendant who requests suppression bears the burden of production and persuasion.").

### III.  ANALYSIS

Coates challenges three potential searches and seizures: one involving a warrant and two that do not.  The Court will address each category of search in turn.  For the reasons that follow, the Court denies Coates's motion to suppress evidence.

### A.  The Court Will Not Suppress Evidence from the March 15, 2006 Search.

Coates first challenges the March 15, 2006 search of his person, during which law enforcement personnel recovered $135 in cash and $20 in "buy money."  As the discovery that the Government has provided explains, officers from the Columbus Police Department (CPD) encountered Coates during a drug trafficking investigation.  On March 13 and March 15, 2006, respectively, a confidential informant working with CPD detectives conducted controlled buys of crack cocaine from individuals at 1338 North Fifth Street in Columbus, Ohio.  At least three males, two of whom were armed with handguns, were involved in the transactions.  Shortly after the second controlled buy, the police executed a search warrant issued by Judge Carrie Glaeden of the Franklin County Municipal Court.  During the search of the residence and its occupants, officers discovered crack cocaine, marijuana, drug paraphernalia (including digital scales), over $5,000 in cash, and six firearms.  Coates was present at the residence when police executed the warrant.  Officers seized $155 in cash from the pocket of Coates's pants.

#### 1.  A Valid Search Warrant Existed to Support this Search.

Coates first argues that the underlying warrant and supporting affidavit were not included in discovery, thus calling into question the validity of the search.  Coates is partially correct; the Government omitted the search warrant and affidavit from its initial discovery production.  According to the Government, those six pages were "accidentally scanned backwards, meaning that [they] appeared as blank pages in the discovery package for Overt Act No. 19." (Doc. 614).

Nevertheless, when Coates brought this matter to the Government's attention, the Government quickly corrected the error and produced the relevant documents, both to Coates's counsel and in a public filing on the Court's docket. (*See* Doc. 614, Ex. A). As a result, Coates had the information he needed prior to the deadline for filing any reply brief. Coates elected not to file a reply brief. Thus, the Court can only presume that Coates no longer challenges the March 15, 2006 search on the basis of it lacking a warrant.

### 2. Probable Cause Supported the Search Warrant.

In the alternative, Coates argued that, without access to the warrant and supporting affidavit, he was "unable to evaluate the scope of the search warrant or whether it issued on probable cause." (Doc. 599). Here again, Coates obtained access to both documents well in advance the deadline for filing any reply brief. The Government provided Coates a copy of the missing warrant and affidavit on June 4, 2015—nearly two weeks before the Government filed its opposition to Coates's motion, and nearly four weeks before the deadline for Coates to file a reply. (*See* Doc. 614). Under these circumstances, the Court must presume that Coates no longer challenges this search on the basis of a lack of probable cause to support the warrant.

Putting aside these procedural matters, even if Coates *continues* to challenge the March 15, 2006 search on the basis that the warrant lacked probable cause, his argument fails. Probable cause sufficient to justify a search warrant exists when, under the totality of the circumstances, there is "a fair probability that fruits of a criminal activity will be located within the premises to be searched." *United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004) (quotation omitted). Put differently, the judicial officer issuing the search warrant must find a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quotation omitted).

5

The Sixth Circuit has defined "probable cause" as a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Harris*, 255 F.3d 288, 292 (6th Cir. 2001) (quotation omitted). Under this definition, "[a] finding of probable cause does not require an actual showing of criminal activity, but rather, requires only a fair probability or substantial chance of criminal activity . . . ." *Id.* (quotation omitted). Probable cause entails a "practical, non-technical conception that deals with the factual and practical considerations of everyday life." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quotation omitted). As such, courts should review a search warrant and supporting affidavit "in a commonsense—rather than a hypertechnical—manner" and should not "engag[e] in line-by-line scrutiny." *United States v. Woolsey*, 361 F.3d 924, 926 (6th Cir. 2004). Furthermore, a judicial officer considering a search warrant application may give "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found . . . based on the nature of the evidence and the type of offense." *Rodriguez-Suazo*, 346 F.3d at 644 (quotation omitted).

Here, Detective Stephen Galiffo's affidavit in support of the search warrant established probable cause to search 1338 North Fifth Street and anyone on the premises. His affidavit outlined the following, in detail: (1) the confidential informant's ("CI") knowledge of crack cocaine transactions at the residence, including a controlled buy executed just one day before applying for the warrant; (2) the fact that the substance the CI obtained tested positive for crack cocaine; (3) the CI's working relationship with law enforcement, including providing information that led to the arrest of at least three other drug dealers; and (4) Detective Galiffo's experience with drug trafficking investigations and his assessment that drug money and contraband are often concealed or transferred to others within a drug house prior to police entry.

Based on this information and her belief that evidence of criminal activity would be found at 1338 North Fifth Street, Judge Carrie Glaeden concluded that probable cause existed to search the residence and those on its premises.  Accordingly, she issued a warrant authorizing police to search both "1338 N. 5th Street, Columbus, Ohio . . . and the curtilage thereof" and "any person or persons at such premises or curtilage, identities known or otherwise."  CPD officers executed the warrant the next day (March 15, 2006), less than an hour after the CI completed a second controlled buy of crack cocaine at the house.

Under these circumstances, Judge Glaeden was justified in issuing the search warrant. The Sixth Circuit repeatedly has upheld the validity of warrants that were based on probable cause of the same or a similar nature.  *See, e.g.*, *United States v. Pinson*, 321 F.3d 558, 560-61, 565 (6th Cir. 2003) (holding that probable cause existed to search residence at which confidential informant who had worked with law enforcement in the past executed a controlled buy of crack cocaine); *Harris*, 255 F.3d at 292-93 (holding that probable cause existed to search residence at which confidential informant who had worked with law enforcement in the past observed drug sales within the past seventy-two hours and engaged in two controlled buys).  Put simply, probable cause supported the warrant here as well.

### 3.  CPD Officers Did Not Exceed the Scope of the Search Warrant.

Coates briefly argues that the search was improper because he "was not a resident of the Property, although he was present when law enforcement executed the search warrant." (Doc. 599).  Coates cites *Ybarra v. Illinois*, 444 U.S. 85 (1979), for support.  In *Ybarra*, the warrant in question authorized police to search a tavern and one named individual (the bartender) for evidence of illegal drugs, but the officers exceeded the scope of the warrant when they searched over a dozen other patrons who happened to be on the premises.  *Id.* at 88, 90-92.

*Ybarra* offers no support to Coates. Unlike in *Ybarra*, where the search warrant affidavit "did not allege that the bar was frequented by persons illegally purchasing drugs" and "did not state that the informant had ever seen a patron of the tavern purchase drugs from [the bartender] or from any other person," *id.* at 90, the supporting affidavit in this case plainly connected the alleged illicit activity to both the residence *and* to those on its premises. The affidavit described in detail a controlled buy from a trusted CI and coupled those allegations with the affiant's own experience in drug trafficking investigations, which led him to believe that "where illegal contraband is stored or sold, it has been established that illegal sales are completed with more than one person present on the premises and that drugs, drug monies or other contraband may be concealed or transferred to any person inside the residence prior to police entry." As such, Detective Galiffo explicitly requested authorization "to search any person in [the] residence for contraband and/or drug monies," and the resulting warrant authorized just that. Thus, the officers' actions in executing the search warrant on March 15, 2006—including the search of Coates and the seizure of evidence from his person—were consistent with the scope of the warrant. *Ybarra*, which involved officers vastly exceeding the scope of an otherwise valid warrant, offers Coates no refuge. *See id.* at 92.

Coates's focus on the ownership of the residence is similarly misplaced. As the Supreme Court has explained, "[t]he critical element in a reasonable search *is not that the owner of the property is suspected of crime* but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (emphasis added). Because warrants authorize the search of "places" and the seizure of "things," they are not directed at individuals, and they "need not even name the person from whom the things will be seized." *Id.* at 555.

8

**B. The Court Will Not Suppress Evidence Seized on March 3, 2005, or April 6, 2006.**

Coates also moves to suppress evidence concerning two crimes listed in the Government's Notice of Intent to Rely on Evidence, *i.e.*, to suppress evidence concerning the following two unindicted overt acts: (1) his solicitation of other members of the Short North Posse to commit assault and robbery on March 3, 2005, and (2) his possession of a firearm, which he allegedly used to fire upon another individual, on April 6, 2006. (Doc. 565). According to Coates, he "*believes* law enforcement conducted unconstitutional searches and/or seizures on [those] dates" and "submits that evidence was obtained on [both those] dates either without a warrant and with no applicable exception or pursuant to a warrant lacking probable cause." (Doc. 599) (emphasis added). Coates, however, offers no argument in support. He does not describe, with any particularity, what type of search or seizure occurred on those dates, nor does he specify what evidence (if any) the Government unlawfully obtained.

This Court cannot grant a motion to suppress that does not even *hint* at which evidence the defendant seeks to exclude. *United States v. Starks*, 193 F.R.D. 624, 626 (D. Minn. 2000) ("[T]he beginning point of any Motion to Suppress should be to specify the evidence the party seeks to suppress."); *United States v. Quiroz*, 57 F. Supp. 2d 805, 823 (D. Minn. 1999) ("In motions to suppress evidence, a moving party must specify the statement or evidence which is sought to be suppressed, and articulate with clarity the factual and legal basis upon which each is sought to be suppressed."); *cf. United States v. LaRouche Campaign*, 682 F. Supp. 623, 626-27 (D. Mass. 1987) ("Only if and when a particular item is identified as the subject of a motion to suppress and a related request for an evidentiary hearing can the court determine whether a hearing . . . should be allowed.") (admonishing counsel against requesting "open-ended evidentiary hearing[s] as to all aspects of [a] search").

Nor can the Court surmise, without any argument on the matter, whether a hypothetical search or seizure somehow violated the Constitution.  As the Sixth Circuit has explained time and again, "[i]t is well settled that in seeking suppression of evidence *the burden is upon the defendant* to display a violation of some constitutional or statutory right justifying suppression." *Rodriguez-Suazo*, 346 F.3d at 643 (emphasis added); *see also, e.g.*, *United States v. Payne*, 588 F. App'x 427, 431 (6th Cir. 2014) ("The defendant bears the burden to demonstrate a violation of some constitutional or statutory right justifying suppression."); *Blakeney*, 942 F.2d at 1015 ("In the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search.").  Coates's motion falls short under these principles, both as to his burden of production and persuasion.  *See Patel*, 579 F. App'x at 453.  To the extent Coates seeks to preserve this issue by filing a motion to suppress, he has done so.

## IV.  CONCLUSION

For these reasons, Coates's motion to suppress evidence (Doc. 599) is **DENIED**.

**IT IS SO ORDERED.**

      **s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  October 16, 2015**