**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 2:14-CR-127 |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| | : | |
| **LANCE A. GREEN,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE*

The United States, by and through undersigned counsel, hereby submits this response to the motions *in limine* filed by defendants Lance Green and Thomas Coates. For the reasons set forth more fully in the attached memorandum, the defendants' motions should be denied.

### BACKGROUND

On May 6, 2016, Lance Green filed three motions *in limine*: (1) a motion to preclude Jamilla McCall from testifying that Mr. Green spoke to her in 2006 about whether to kill the mother of Jafessa Johnson; (2) a motion to preclude Brandi Darthard and Dana Darthard from testifying that they heard a rumor about Mr. Green firing shots into Dana Darthard's residence at some point prior to 2005; and (3) a motion to preclude Tabib Broomfield from testifying regarding statements that Mr. Green made about an incident involving a witness in January 2006. (Doc. #1069.)

On May 6, 2016, Thomas Coates filed three motions *in limine*: (1) a motion to adopt defendant Christopher Harris' motion to excludes statements made by Keith Maye, Marcus Peters, and Carl Gibbs; (2) a motion to conduct a pretrial hearing to preview certain photographs

1

and to exclude "any unfairly prejudicial photographs"; and (3) a motion to exclude any evidence regarding Mr. Coates' assault of Amanda Smalley on April 6, 2006.  (Docs. #1070, 1071, and 1072.)

The United States' response to each of these motions is outlined below.[1]

## LEGAL STANDARDS

### I. Federal Rules of Evidence 401 and 403

The Federal Rules of Evidence provide that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Evidence can be relevant even if it does not relate to an element of a charged offense or to a fact in dispute, so long as it provides background information about the defendant or the offenses.  Fed. R. Evid. 401, advisory committee's note ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). There is a "low threshold" for establishing that evidence is relevant under Rule 401.  *Tennard v. Dretke*, 542 U.S. 274, 285 (2004).  Thus, a defendant "faces a significant obstacle in arguing that evidence should be barred because it is not relevant."  *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012); *see United States v. Collins*, 799 F.3d 554, 578 (6th Cir. 2015) ("This circuit applies an 'extremely liberal' standard for relevancy.") (citation omitted).

Under the Rules of Evidence, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  District courts have broad discretion in making determinations

---

[1] By rule, the deadline for the United States to respond to the defendants' motions *in limine* would have been May 27, 2016.  At the government's request, the Court extended the deadline to June 6, 2016.  (Doc. #1130.) Accordingly, this response is timely filed.

under Rule 403. *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993); *see United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008) (noting the "highly discretionary" standard under Rule 403). As such, a court's decision to admit or exclude evidence under Rule 403 is afforded great deference and "will not be lightly overruled." *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006).

Rule 403 offers a party no protection from evidence that is merely "prejudicial." All evidence prejudices the interests of one party or another. Instead, Rule 403 is concerned only with the risk of *unfair* prejudice. In the words of the Sixth Circuit, "the prejudice to be weighed is the *unfair* prejudice caused by admission of the evidence. Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *Id.* at 456 (emphasis in original); *see United States v. Howard*, 621 F.3d 433, 457 (6th Cir. 2010) ("[U]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis.").

## II.  Confrontation Clause

The Sixth Amendment of the Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54, 68 (2004), the Supreme Court held that the Confrontation Clause bars the admission of testimonial, out-of-court statements offered against a defendant for the truth of the matter asserted, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.

The rule announced in *Crawford* applies to out-of-court statements that are "testimonial." *Id.* at 68-69 (holding that Constitution requires confrontation of declarant only "[w]here

testimonial statements are at issue"). Thus, when statements are not testimonial in nature, their admission into evidence does not implicate the Sixth Amendment. *See Giles v. California*, 554 U.S. 353, 376 (2008) ("[O]nly *testimonial* statements are excluded by the Confrontation Clause.") (emphasis in original); *Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

The Supreme Court has defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (citation omitted). The Court in *Crawford* did not provide a comprehensive definition of "testimonial," but it did identify various formulations of what it characterized as "the core class" of testimonial statements, as follows:

> *ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially…;
>
> extrajudicial statements…contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions…; [and]
>
> statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]

*Id.* at 51-52 (internal citations and quotation marks omitted).

Since *Davis*, courts have evaluated the "primary purpose" of a statement to determine whether it is testimonial or non-testimonial. *See Davis*, 547 U.S. at 822. Under this test, a court is to consider "all of the relevant circumstances" in assessing whether a statement was made "with the primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358, 369 (2011). Post-*Crawford*, the Sixth Circuit asks whether the

declarant "intend[ed] to bear testimony against the accused" to determine whether a statement is testimonial. *United States v. Collins*, 799 F.3d 554, 585 (6th Cir. 2015) (internal quotation marks and citation omitted). The key inquiry is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id.* (internal quotation marks and citation omitted). If that question is answered in the negative, then the Confrontation Clause is not a factor. *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) ("The Confrontation Clause has no bearing on nontestimonial out-of-court statements.").

In the years following *Crawford*, the Supreme Court initially declined to consider "whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Davis*, 547 U.S. at 823 n2. That changed last year, when the Court was squarely presented with the question that it had previously reserved: "whether statements to persons other than law enforcement officers are subject to the Confrontation Clause." *Ohio v. Clark*, 135 S. Ct. 2173, 2181 (2015). Though the Court declined to adopt a rule categorically excluding statements to non-law enforcement personnel from the scope of the Confrontation Clause, it concluded that "such statements are *much less likely* to be testimonial than statements to law enforcement officers." *Id.* (emphasis added).

**III. Hearsay Rule**

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Under otherwise permitted under the Rules of Evidence, hearsay is not admissible at trial. Fed. R. Evid. 802.

### A.     Co-Conspirators' Statements (Federal Rule of Evidence 801(d)(2)(E))

Statements made by a defendant's co-conspirator "during and in furtherance of the conspiracy" are excluded from the hearsay rule. Fed. R. Evid. 801(d)(2)(E). Before a district court can admit a co-conspirator's statement into evidence, the government must establish by a preponderance of the evidence that "(1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the coconspirator's statement was made in the course of and in furtherance of the conspiracy." *United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002). Admissible statements "can take many forms, such as keeping co-conspirators advised, or concealing aspects of the scheme." *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000) (internal quotation marks and citation omitted). A statement is admissible under Rule 801(d)(2)(E) even if it is "susceptible of alternative interpretations." *Id.* In fact, a co-conspirator's statement can be admitted into evidence "even if it is not exclusively, or even primarily, made to further the conspiracy." *Id.* Whether to admit a statement under this rule is left to the sound discretion of the district court. *Kone*, 307 F.3d at 440.

### B.     Statements Against Interest (Federal Rule of Evidence 804(b)(3))

Evidence that qualifies as hearsay is admissible if it falls within the "statements against interest" exception to the hearsay rule. *See* Fed. R. Evid. 804(b)(3). Statements are admissible under Rule 804(b)(3) if three conditions are met: (1) the declarant is unavailable; (2) from the perspective of a reasonable person, the statements were adverse to the declarant's penal interest; and (3) "corroborating circumstances truly establish the trustworthiness of the statement[s]." *Tocco*, 200 F.3d at 414. Importantly, Rule 804(b)(3) permits the introduction of statements that incriminate not only the declarant, but others, in criminal conduct. *Id.* at 415; *United States v. Franklin*, 415 F.3d 537, 548 (6th Cir. 2005).

In affirming the admission of statements against interest, the Sixth Circuit has often pointed to a common set of circumstances to corroborate a statement's trustworthiness.  In *Tocco*, statements inculpating the declarant, the defendant, and others in a RICO conspiracy were held to be trustworthy because the declarant made them to his son (rather than to law enforcement) and was not attempting to shift blame to others.  *Tocco*, 200 F.3d at 416 (affirming admission of testimony of individual who testified about statements made by declarant who died shortly before trial).  In *Franklin*, the declarant made the challenged statements to a close friend, had no reason to believe that the person would reveal the statements to law enforcement, and did not attempt to minimize his role in a bank robbery.  *Franklin*, 415 F.3d at 548 (upholding admission of statements of non-testifying co-defendant that inculpated declarant and defendant in robbery).  In *Johnson*, a co-defendant made statements to a friend that he met in prison, did not know that his words would be shared with the government and thus was not trying to obtain any sort of benefit, and was not attempting to avoid blame for the crime by shifting responsibility to the other participants.  *Johnson*, 581 F.3d at 327 (affirming admission of co-defendant's statements to confidential informant in which declarant described bank robbery and identified participants).  Finally, in *United States v. Manfre*, the Eighth Circuit held that the declarant's statements were admissible because was speaking to his fiancée – an "intimate confidante" – and because he took responsibility for arson.  *United States v. Manfre*, 368 F.3d 832, 841-842 (8th Cir. 2004).[2]

---

[2] In some of the cases cited in the preceding paragraph, the trustworthiness inquiry was part of the analysis of "particularized guarantees of trustworthiness" under the Confrontation Clause.  This is a distinction without a real difference, because the "particularized guarantees of trustworthiness" inquiry formerly required by *Ohio v. Roberts*, 448 U.S. 56 (1980), is substantially similar to the "trustworthiness" analysis under Rule 804(b)(3).  *See Johnson*, 581 F.3d at 327.

**ARGUMENT**

**Lance Green's Motions *in Limine***

I.     **The Court Should Deny the Motion to Exclude Statements that Lance Green Made in 2006 About Potentially Killing Yafessa Johnson's Mother.**

Mr. Green moves to exclude evidence that in 2006, he asked Jamilla McCall whether he should go to Beckley, West Virginia to kill the mother of Yafessa Johnson.  Ms. Johnson was not only the defendant's former girlfriend, she was also a potential witness against him.  In fact, Ms. Johnson had provided law enforcement with information about Mr. Green's drug trafficking activities and other illegal conduct.  The defendant's argument that his statements about killing Ms. Johnson's mother are inadmissible under Rules 401 and 403 should be rejected.

Count One of the Superseding Indictment charges that Mr. Green and numerous other individuals were members and/or associates of the Short North Posse, a racketeering enterprise. The Superseding Indictment alleges that the purposes of the enterprise included promoting and enhancing the authority and reputation of the Short North Posse through intimidation and violence, protecting the enterprise and its members and associates from detection and prosecution, punishing those who did not comply with its code and rules, and retaliating against those who committed acts against the enterprise.  (Doc. #300 at 1152-1154.)  The Superseding Indictment further alleges that to achieve these goals, members and associates of the Short North Posse used various means, such as violence and intimidation, to protect the enterprise's ability to engage in criminal activity and to deter witnesses from providing information to law enforcement as part of a "no snitching" code.  (*Id.* at 1155-1158.)  Among the Short North Posse's racketeering activities identified in the Superseding Indictment are tampering with a witness, victim or informant, in violation of 18 U.S.C. § 1512, and retaliation against a witness, victim or informant, in violation of 18 U.S.C. § 1513.  (*Id.* at 1159.)

8

Evidence that Mr. Green – an alleged member of the Short North Posse's "Cut Throat Committee" who is charged in this case with two substantive murder counts and who allegedly participated in numerous other criminal acts in furtherance of the enterprise – threatened to kill a witness' mother is certainly relevant to Count One. Such evidence has a "tendency to make a fact" – the existence of the racketeering enterprise – "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, the risk of unfair prejudice to Mr. Green does not substantially outweigh the probative value of this evidence. Fed. R. Evid. 403. While the defendant's statements about killing the relative of a witness are certainly prejudicial, they are not unfairly so, as this evidence does not "tend[] to suggest a decision on an improper basis." *Howard*, 621 F.3d at 457. Accordingly, Mr. Green's motion *in limine* should be denied.

II. **The Court Should Deny as Moot the Motion to Exclude Testimony from Brandi Darthard and Dana Darthard Regarding Lance Green Firing Shots at Dana Darthard's House, Because the United States Does Not Intend to Introduce this Evidence in Trial Two.**

Mr. Green moves to preclude Brandi Darthard and Dana Darthard from testifying that they heard "a rumor" that the defendant shot up Dana Darthard's residence at some point before 2005. At this time, the United States does not intend to reference this "rumor" during its voir dire or opening statement or to introduce the Darthards' challenged testimony into evidence during its case-in-chief in Trial Two. In the event this "rumor" becomes relevant, counsel for the United States will approach defense counsel and the Court before seeking to introduce this evidence at trial. In light of the circumstances, the Court should deny Mr. Green's motion *in limine* as moot.

III. **The Court Should Deny the Motion to Exclude Lance Green's Statements Regarding an Incident Involving a Witness in January 2006.**

Mr. Green moves to preclude Tabib Broomfield from testifying that in January 2006, the

9

defendant made incriminating statements about a witness.  For all the reasons set forth above in response to Mr. Green's motion *in limine* concerning Yafessa Johnson, the defendant's assertion that Rules 401 and 403 bar the admission of this evidence misses the mark.  As alleged in the Superseding Indictment, tampering with, or retaliating against, a witness or informant would be a predicate act in furtherance of the charged racketeering conspiracy.  Accordingly, this motion *in limine* should be denied.[3]

## Thomas Coates' Motions *in Limine*

I.     **The Court Should Deny the Motion to Exclude Statements by Keith Maye, Marcus Peters, and Carl Gibbs.**

Mr. Coates seeks to adopt the arguments that a co-defendant, Christopher Harris, previously made in a motion *in limine* to exclude certain statements by Keith Maye, Marcus Peters, and Carl Gibbs.  (*See* Doc. #968.)  The United States opposed Mr. Harris' motion on various grounds and hereby incorporates those arguments by reference in response to Mr. Coates' motion.  (*See* Doc. #993.)  On March 31, 2016, the Court issued an Order denying the relief that Mr. Harris requested in Trial One (and that Mr. Coates requests in Trial Two).  (Doc. #1014.)  The Court's ruling should apply with equal force to Mr. Coates' instant motion.

Specifically, Mr. Maye should be permitted to testify that Mr. Harris attended a court proceeding in a separate case during which Mr. Maye testified against members of the Short North Posse.  (*Id.* at 5370-5372.)  With respect to Mr. Maye's belief that Mr. Harris planned to kill him, the United States does not intend to reference this fact during its voir dire or opening statement or to introduce Mr. Maye's opinion into evidence during its case-in-chief in Trial Two.

---

[3] Mr. Green's statement that Mr. Broomfield was "not in a gang with the Defendant" is misleading. As the United States demonstrated during Trial One, Mr. Broomfield is an unindicted co-conspirator. The government anticipates that this fact will be underscored during Trial Two. Moreover, the fact that Mr. Green's actions with respect to this unnamed witness are "uncharged conduct" is irrelevant. This Court has already ruled that the United States can rely on unindicted overt acts to prove the racketeering conspiracy charged in Count One of the Superseding Indictment. (*See* Docs. #704 and 990.)

In the event that Mr. Maye's suspicion becomes relevant, counsel for the United States will approach defense counsel and the Court before seeking to introduce this evidence at trial.

The United States should be permitted to introduce Mr. Peters' statements regarding the murder of Alan Johnson, his membership in the Short North Posse, and his intention to participate in a robbery. This Court previously ruled that the challenged statements do not run afoul of the Confrontation Clause and are admissible as statements against penal interest under Rule 804(b)(3). (*Id.* at 5372-5376.)

With respect to the testimony of Carl Gibbs, Mr. Coates' motion should be denied as moot. The United States does not intend to reference Mr. Gibbs' statements during its voir dire or opening statement or to introduce Mr. Gibbs' statements into evidence during its case-in-chief in Trial Two. In the event the challenged statements become relevant, counsel for the United States will approach defense counsel and the Court before seeking to introduce this evidence at trial.

For the reasons summarized above, Mr. Coates' motion *in limine* to exclude the statements of Keith Maye, Marcus Peters, and Carl Gibbs should be denied.

## II. The Court Should Deny the Motion to Conduct a Pretrial Hearing to Examine Photographs and to Exclude Unspecified Photographs.

Mr. Coates asks that the Court convene a pretrial hearing to determine the admissibility of "certain photographs" and requests that unspecified "graphic" and "gruesome" photographs be excluded from evidence under Rules 401 and 403. (Doc. #1071 at 5625-5626.) The defendant does not identify with specificity which photographs he seeks to challenge, except to say that "[s]ome the photographs [of the victims in this case] were taken at crime scenes while others were taken at laboratories during forensic examinations of the remains." (*Id.* at 5625.)

Mr. Coates's motion should be denied. Photographs of crime scenes – including images

11

that may include the bodies of the murder victims in this case --- are undoubtedly relevant under Rule 401.  At trial, the United States will approach the bench and give defense counsel an opportunity to object before publishing photographs of the decedents to the jury.  The government will endeavor not to present cumulative or unnecessary photographs of the deceased victims, such that the probative value of this evidence will not be substantially outweighed by the risk of unfair prejudice under Rule 403.  With respect to the autopsy photographs, the United States will confer with defense counsel in the hopes of reaching a stipulation about the admissibility of those photographs and the related coroners' reports.  The Court and the parties employed a similar approach during Trial One, with the goal of balancing the government's need to present evidence sufficient to prove the elements of the charged offenses with the defendants' right to a fair.  The United States is confident that the appropriate balance can be struck once again in Trial Two.

**III.    The Court Should Deny the Motion to Exclude Evidence Regarding Thomas Coates' Assault of Amanda Smalley on April 6, 2006.**

Citing Rules 401, 403, and 404(b), Mr. Coates moves to exclude evidence regarding his assault of Amanda Smalley on April 6, 2006.  On that date, Ms. Smalley was speaking with her sister, Sophia Sparks, and an acquaintance, Mark Hall, in the Short North area of Columbus, Ohio.  Mr. Coates and four other males approached the group and began arguing with Mr. Hall.  Mr. Coates physically attacked Mr. Hall, who was knocked to the ground.  When Ms. Smalley attempted to help Mr. Hall get up, Mr. Coates threatened her and then punched her in the face.  Ms. Smalley ran to her vehicle.  Mr. Coates, who had a handgun, fired six or seven shots in her direction.  Three bullets struck Ms. Smalley's car and a fourth bullet hit another vehicle on the street.  In February 2008, Mr. Coates pled guilty to three counts of felonious assault in the Franklin County Court of Common Pleas for his conduct on April 6, 2006.

Mr. Coates' assault on Ms. Smalley is relevant to the issues in Trial Two. Count One of the Superseding Indictment charges that Mr. Coates and numerous other individuals were members and/or associates of the Short North Posse, a racketeering enterprise. The Superseding Indictment alleges that the purposes of the enterprise included "[p]romoting, protecting, and enhancing the authority, reputation, and standing of the Short North Posse through the use of intimidation, threats, possession of weapons, assaults, attempted murders, and murders." (Doc. #300 at 1153.) The Superseding Indictment further alleges that to achieve these goals, members and associates of the Short North Posse used various means, such as violence and intimidation, and that they "routinely armed themselves with firearms in order to…project a violent attitude[.]" (*Id.* at 1155-1157.) The Superseding Indictment also alleges that "[t]he Short North Posse enterprise had an informal structure where status and respect were acquired in large part by the commission of acts of violence…" (*Id.* at 1158.)

The fact that Mr. Coates assaulted Ms. Smalley – both with his fist and his firearm – to project a violent attitude, increase his status within the Short North Posse, and intimidate those would dare cross him makes this evidence relevant to the existence of the racketeering enterprise and Mr. Coates' role in it. Fed. R. Evid. 401. Though the evidence may "paint[] the defendant in a bad light," the danger of unfair prejudice does not substantially outweigh the probative value of this evidence. *Chambers*, 441 F.3d at 456; Fed. R. Evid. 403. As such, evidence of Mr. Coates' felonious assault is admissible under Rules 401 and 403.

Mr. Coates' argument under Rule 404(b) should fail for at least two reasons. First, as explained above, the defendant's assault is relevant to Count One because the jury could conclude that it was committed in furtherance of the charged racketeering conspiracy. Mr. Coates' assault on Ms. Smalley certainly falls within the "core of criminality" alleged in the

13

Superseding Indictment: Mr. Coates is named in Count One; attempted murder is one of the types of predicate racketeering activity by which the defendants allegedly agreed to conduct the affairs of the enterprise; Mr. Coates committed this crime within the timeframe that the Short North Posse is alleged to have operated; and the assault on Ms. Smalley "fits within the general *modus operandi* alleged in the Superseding Indictment." (Doc. #990 at 5167.)

Second, as this Court has repeatedly ruled, it is not necessary for the government to allege any specific overt acts in connection with Count One.[4] (Doc. #704 at 3204-3205 ("Neither § 1962(d) nor the cases interpreting that subsection require proof of a specific predicate act or *any* overt act taken in furtherance of the conspiracy… Accordingly, this Court will not preclude the Government from presenting evidence of other overt acts to prove Count One, at least with respect to the challenged notices of intent.") (emphasis in original) (internal quotation marks and citation omitted); Doc. #990 at 5166-5172 (applying similar reasoning in denying co-defendant's motion to exclude evidence of involvement in unindicted overt act).) *See*, *e.g.*, *United States v. Glecier*, 923 F.2d 496, 500-501 (7th Cir. 1991); *United States v. Applins*, 637 F.3d 59, 81 (11th Cir. 2011) ("[A] RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed…"); *United States v. Dimora*, 829 F. Supp. 2d 574, 586 (N.D. Ohio 2011); *see also United States v. Corrado*, 286 F.3d 934, 937 (6th Cir. 2002) ("Unlike the general conspiracy statute, § 1962(d) requires no 'overt or specific act' in carrying the RICO enterprise forward.").

For these reasons, Mr. Coates' motion to exclude evidence that he physically assaulted and fired shots at Ms. Smalley on April 6, 2006 should be denied.

---

[4] On April 22, 2015, the United States first provided notice that it intended to rely on this incident as one of the "predicate offenses and acts relating to the affairs of the enterprise." (Doc. #565 at 2296-2297.) The government continued to list this incident in subsequent notices of unindicted overt acts. (*See* Doc. #778 at 3598; Doc. #910 at 4340.)

## CONCLUSION

For the reasons stated herein, the Court should (1) deny Mr. Green's motion *in limine* concerning statements that he made to Jamilla McCall, (2) deny as moot Mr. Green's motion *in limine* concerning the testimony of Brandi and Dana Darthard, (3) deny Mr. Green's motion *in limine* concerning statements that he made to Tabib Broomfield, (4) deny Mr. Coates' motion *in limine* concerning the statements of Keith Maye, Marcus Peters, and Carl Gibbs, (5) deny Mr. Coates' motion *in limine* concerning unspecified photographs, and (6) deny Mr. Coates' motion *in limine* concerning his assault of Amanda Smalley.

    Respectfully submitted,

    BENJAMIN C. GLASSMAN
    Acting United States Attorney

    s/ David M. DeVillers
    DAVID M. DEVILLERS (0059456)
    Assistant United States Attorney

    s/ James Lowe
    JAMES LOWE (0063452)
    Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Defendants' Motions *in Limine* was served this 6th day of June, 2016, via e-mail to counsel of record for Lance Green and Thomas Coates, respectively.

    s/ David M. DeVillers
    DAVID M. DEVILLERS (0059456)
    Assistant United States Attorney