IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : CASE NO. 2:14-cr-127-ALM-9 |
| | : CASE NO. 2:06-cr-264 |
| Plaintiff, | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : |
| THOMAS E. COATES, | : |
| | : |
| Defendant. | : |

**OPINION AND ORDER**

This matter comes before this Court on Defendant Thomas Coates' Memorandum Addressing Multiple Terms of Supervised Release and Motion to Reduce Sentence. (2006, ECF No. 79; 2014 ECF No. 1803). For the following reasons, this Court holds that Defendant did not receive the statutorily required, written notice of his 2006 term of supervised release. Because notice was **IMPROPER**, this Court will **NOT REVOKE** Defendant's 2006 term of supervised release. Additionally, Defendant's Motion to Reduce Sentence is **DENIED** (2006, ECF No. 79; 2014 ECF No. 1803).

**I. BACKGROUND**

**A. Factual Background**

On November 28, 2006, Defendant was charged with one count of distributing more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(iii). (Case No. 2:06-cr-00264, ECF No. 75 at 1) (hereinafter "2006"). Defendant was convicted of the offense on March 21, 2007. (2006, ECF No. 27). At sentencing, on July 26, 2007, U.S. District Court Judge John D. Holschuh sentenced Defendant to 120 months in prison and 5 years of supervised release, the statutory minimum for a Class A felony at the time. (2006, ECF No. 44 at 28:16-25). Even

1

though the U.S. Sentencing Guidelines recommended a higher sentence, Judge Holschuh explained that Defendant's conviction involved 55.17 grams of cocaine base, which was "just barely, barely" over the 50 grams required for a conviction. (*Id.* at 20:15-21:8). He further explained that a recent amendment to the sentencing guidelines promulgated by the Sentencing Commission pointed toward reducing Defendant's base offense level. (*Id.* at 21:9-23).

On June 24, 2014, while still imprisoned, Defendant was indicted for Conspiracy to Commit Racketeering in violation of 18 U.S.C. § 1962(d), a class C felony, as part of the Short North Posse cases. (No. 2:14-cr-00127-9, ECF No. 14) (hereinafter "2014"). On July 7, 2016, Defendant pled guilty to the offense pursuant to Rule 11(c)(1)(C). (2014, ECF No. 1204). The plea agreement included a binding range of 72 to 144 months of imprisonment, which was below the sentencing guideline range for Defendant's offense level of 28 with a criminal history of V. (2014, ECF No. 1578 at 4:14-15:16, 8:20-9:1). At sentencing on January 25, 2017, this Court imposed an 84-month term of imprisonment and 3 years of supervised release, to run concurrent with two undischarged terms of imprisonment with the State of Ohio (No. 06-cr-4261 and No. 06-cr-2792). (*Id.* at 26:22-27:25). The below statement by this Court provides context for the sentence imposed:

> "You're going to be locked away for a period of time. I trust – and Mr. Coates, there's something in me that believes that you're not going to continue to transgress. Now, I could be wrong. If you prove me wrong and you come back to me on a supervised release violation, you will understand what it means to have the virtual book thrown at you . . . You've gotten essentially the break of a lifetime because you didn't participate in any murders. There's no reason, there is no reason, no excuse for you to transgress any further." (2014, ECF No. 1578 at 24:5-19).

There was no reference to Defendant's 2006 term of supervised release during the 2017 sentencing.

On July 17, 2020, Defendant was released from prison and began serving the 3-year term of supervised release associated with his 2014 racketeering charge. (2014, ECF No. 1798 at 1). The United States Probation Office, however, documented Defendant's adjustment to supervision

as poor.[1] (2006, ECF No. 61 at 5). On October 28, 2020, this Court modified Defendant's conditions of supervised release to include home detention and 90 days of location monitoring after Defendant left the Southern District of Ohio without permission. (2014, ECF No. 1798-1 at 3). Unfortunately, in November 2020, Defendant was involved in a shooting that resulted in him being hospitalized for several weeks. (*Id.*) In December 2020, Mr. Coates was placed on Voice ID, a component of location monitoring due to his mobility issues, which he successfully completed in March 2021. (*Id.*). That same month, Mr. Coates was alleged to be the shooter in a drive by shooting—as identified by a witness on the scene—but the charges in Franklin County Municipal Court were dismissed. (*Id.*). Additionally, on April 16, 2021, Mr. Coates tested positive for marijuana. (*Id.*). The Probation Office notes that since his release in July 2020, Mr. Coates has not attempted to seek employment because he maintains he is physically unable due to his limited mobility. (*Id.*). He was advised to seek employment that would not impact his mobility. (*Id.*).

On July 6, 2021, Columbus law enforcement executed a narcotics search at Defendant's new residence, a move of which Defendant had failed to notify the Probation Office. (2014, ECF No. 1798-1 at 3). In August, Defendant was indicted in Franklin County Common Pleas Court for offenses related to possession and trafficking of cocaine and fentanyl. (*Id.* at 4). While details are limited as the case is ongoing, the facts indicate "that a Columbus Task Force has been investigating a drug trafficking operation in Columbus" in which Defendant "was one of the targets of the investigation." (2014, ECF No. 1798 at 2). Due to these new developments and other alleged violations of the terms of his release, the Probation Office petitioned the Court on August 11, 2021, to issue a warrant to revoke Defendant's supervised release for his 2014 conviction. (2006, ECF

---

[1] As detailed below, the Supervised Release Violation Report and Arrest Warrant were mistakenly filed in another one of Defendant's cases. *See United States v. Thomas Coates*, Case No. 2:06-cr-264 (S.D. Ohio); ECF No. 61. That issue has been since been resolved.

3

No. 61). Finding probable cause that Defendant violated the conditions of his supervised release, this Court issued a warrant for his arrest the same day. (*Id.* at 3). The Probation Office recommended a 24-month sentence to run consecutively to any state sentence imposed, which was the statutory maximum for Defendant's 2014, Class C felony racketeering charge. (*Id.* at 6). While the Probation Office sought revocation of the 3-year term of supervised release attached to Defendant's 2014 charge, the warrant petition was accidentally filed under Defendants 2006 case.

Defendant posted a bond of $1.25 million in his state case in November 2021 and was released pending trial. (2014, ECF No. 1771 at 2). Shortly thereafter, the arrest warrant from the 2014 supervised release term violation petition was executed. On November 29, 2021, Defendant appeared before Magistrate Judge Elizabeth P. Deavers and was ordered detained pending his preliminary supervised release revocation hearing. (2014, ECF No. 1748). Defendant waived his preliminary hearing, and continued detention was ordered pending the final supervised release revocation hearing because Defendant "failed to produce clear and convincing evidence that he will not flee or pose a danger to any person or the community." (2014, ECF Nos. 1750, 1752 at 1). On the same day, an amended Petition for Warrant and Revocation of Supervised Release was filed in the 2014 case, correcting the previous filing error. (2014, ECF No. 1747).

Defendant filed a Motion to Dismiss Petition to Revoke Supervised Release on March 24, 2022. (2006, ECF No. 72). Initially, defense counsel inadvertently filed this motion in Defendant's 2006 case. The motion was refiled under the 2014 case on April 11, 2022. (2014, ECF No. 1769). On July 2, 2022, Defendant filed a Motion for Hearing on Supervised Release in both the 2006 and 2014 cases arguing his continued federal detention caused him to suffer prejudice and that he had been denied a right to a timely supervised release revocation hearing. (2006, ECF No. 73; 2014, ECF No. 1788 at 4). This Court concluded that: (1) holding the final revocation hearing in

abeyance pending adjudication of Defendant's state court charges was not unreasonable; (2) the seven-month delay in a final revocation hearing had not prejudiced Defendant's ability to contest the validity of the revocation of supervised release; but (3) scheduled a date for a final revocation hearing for August 19, 2022. (*Id.* at 7-8).

On August 15, 2022, the U.S. Probation Office filed a Petition for Revocation of Supervised Release in Defendant's 2006 case, and an amended Petition for Revocation of Supervised Release in Defendant's 2014 case. (2006, ECF No. 75; 2014, ECF No. 1798). The petitions explain that Defendant was in violation of the following terms of supervised release: (1) committing another federal, state, or local crime and illegally possessing a controlled substance; (2) communicating/interacting with someone Defendant knows is engaged in criminal activity; and (3) failing to notify his probation officer of his new address. (*Id.*). New arrest warrants associated with the amended petitions were also issued that same day, even though Defendant was already in custody. (2006, ECF No. 76; 2014, ECF No. 1799). In addition to the 24-month sentence recommended by the Probation Office for violation of the terms of Defendant's 2014, 3-year supervised release, the Probation Office also recommended 37 months of imprisonment for Defendant's violation of his 2006, 5-year term of supervised release. (ECF No. 75-1 at 4).

At Defendant's first Final Revocation of Supervised Release hearing, this Court asked the parties to brief the issue of whether Defendant had received proper notice of the terms of his 2006 supervised release sentence. (2006, ECF No. 78; 2014 ECF No. 1801). At Defendant's second Final Revocation hearing, this Court held that Defendant had not violated the terms of his 2006 term of supervised release because he never received written notice of its terms. (ECF No. 85). This Court directed the U.S. Probation Office to provide Defendant a written copy of the terms of his 2006 supervised release, which the Probation Office provided to Defendant in open court. (*Id.*).

The Court also held that Defendant had violated the terms of his 2014 term of supervised release based on the evidence presented, and sentenced Defendant to 24 months in prison for the violation, but no further term of supervised release. (ECF No. 1817). Defendant requested this Court file a notice of appeal regarding the judgment revoking his 2014 supervised release, which was filed by the Clerk's Office on October 21, 2022. (ECF No. 1820).

### B. Notice of 2006 Term of Supervised Release

The Defendant argues that revocation for violating the terms of supervised release imposed in the 2006 case is improper because he did not receive written notice of its the terms. (2006, ECF No. 79 at 7; 2014, ECF No. 1803 at 7). Although Defendant admits that he received actual notice of the 5-year term of supervised release at his 2007 sentencing, Defendant had not since received written notice of said terms. (*Id.*). He alleges that it is unreasonable to expect him to understand the conditions of his supervised release when "it clearly escaped the minds of all" the legal and law enforcement professionals who dealt with his 2014 case. (*Id.*). Because 18 U.S.C. § 3583(f) requires the court to "direct that the probation officer provide the defendant with a *written* statement that sets forth all conditions to which the term of supervised release is subject," Defendant alleges that the actual notice he received in 2007 did not meet the federal statutory requirements. (*Id.* (emphasis added); *see also* 18 U.S.C § 3603(1) (emphasis added)). Defendant states that "it would be patently unfair to revoke a defendant's supervised release and send him back to prison for violating conditions of the release that he had no way of knowing existed." *U.S. v. Arbizu,* 431 F.3d 469, 470 (5th Cir. 2005).

Conversely, the Government argues that actual notice was sufficient for Coates to understand the terms of his 2006 supervised release. (2006, ECF No. 81 at 4; 2014, ECF No. 1806 at 4). The Government cites *Arbizu*, for the proposition that the written notice requirements

6

set out in 18 U.S.C. § 3583(f) and § 3603(1) do not prevent revocation of supervised release where the defendant had actual notice. *Id.*; 431 F.3d at 469. Because Defendant violated the mandatory condition of both his terms of supervised release that he "not commit another federal, state, or local crime," the Government asserts that Defendant would have been well aware of that condition upon beginning supervision in July 2020. (*Id.*).

### C. Motion to Terminate or Reduce 2006 Supervised Release Sentence

The Fair Sentencing Act of 2010 increased the amount of crack cocaine required to trigger the 10-year mandatory minimum sentence from 50 to 280 grams. Pub. L. No. 111-220, § 2(a); 21 U.S.C. § 841(b)(1)(A)(iii). The First Step Act of 2018 gave courts the ability to apply the Fair Sentencing Act retroactively at their discretion. Pub. L. No. 115-391, § 404(b). The parties agree that Defendant's 2006 charge for crack cocaine is a covered offense under the Fair Sentencing Act, meaning Defendant's sentence for the 2006 offense is eligible for relief. (2006, ECF No. 81 at 6; 2014, ECF No. 1806 at 6). Although Defendant has fully served his term of imprisonment for the 2006 charge, courts interpret § 404(b) to allow reduction of a whole sentence, and not just a term of imprisonment. *U.S. v. Sutton*, 962 F.3d 979, 983 (7th Cir. 2020). This includes defendants serving post-revocation sentences related to violations of the covered offense. *U.S. v. Woods*, 949 F.3d 934, 936-37 (6th Cir. 2020).

Defendant asserts that if his 2006 crack cocaine offense was sentenced under current law, he would only be subject to "a mandatory minimum of 5 years and his guidelines would be 110-137 months, based on a total offense level 28 and criminal history category IV." (2006, ECF No. 81 at 10-11; 2014, ECF No. 1806 at 10-11). Defendant continues, "[c]onsistent with the six-level reduction [in the proposed sentencing guidelines] he received [during his 2007 sentencing], his sentence would be 63-78 months, a sentence substantially less than the time Defendant already

7

served." (*Id.*). Therefore, due to changes in the sentencing requirements, Defendant alleges he should receive a sentence reduction.

Alternatively, Defendant asks this Court to terminate the five-year term of supervised release associated with his 2006 offense for three reasons. (*Id.* at 11). Defendant had already served one year of supervised release prior to the first petition for revocation, filed on August 11, 2021, making him eligible for termination under 18 U.S.C. § 3583(e)(1). Second, regardless of the yet to be proven state charges, "Congress has concluded that offenders like defendant do not deserve as harsh a sentence going forward." (2006, ECF No. 81 at 11; 2014, ECF No. 1806 at 11). Defendant alleges that these changed community standards should be taken into consideration. (*Id.*). Finally, terminating Defendant's term of supervised release for his 2006 offense, will not result in a windfall as he will still be subject to the 3-year term of supervised release associated with his 2014 offense sentence. (*Id.*).

Conversely, the Government argues that Defendant's original five-year term of supervised release is still within the revised statutory range, which requires "a term of supervised release of at least 4 years." 21 U.S.C. § 841(b)(1)(B) (2018). Additionally, the Government asserts that a court's review of a First Step Act motion is discretionary and requires "an accurate calculation of the amended guidelines range at the time of resentencing and thorough renewed consideration of the § 3553(a) factors." (2006, ECF No. 81 at 6; 2014, ECF No. 1806 at 6); *U.S. v. Flowers*, 963 F. 3d 492, 498 (6th Cir. 2020). Given Defendant's continued "pattern of serious criminal conduct and breach of this Court's trust," the Government alleges that the § 3553(a) factors do not lean in Defendant's favor. (*Id.* at 7). In particular, the Government asserts that "[c]ourts routinely deny relief when a defendant commits another offense while on supervised release." (*Id.* (citing *U.S. v. Moore*, 2019 WL 6337279, at *3 (N.D. Ohio Nov. 27, 2019)); *U.S. v.*

8

*Temple*, 2022 WL 4094378, at *2 (6th Cir. May 9, 2022) (affirming district court's denial of relief after it had found "that Temple's post-conviction conduct disrespected the court's trust and 'the legal process' and raised "serious concerns regarding recidivism""). They conclude that even though Defendant would have received a lesser sentence under the Fair Sentencing Act than what he served for the 2006 offense, "overservicing" does not make up for the rehabilitative purpose of supervised release. (*Id.* at 9). Therefore, the Government argues that Defendant is not eligible for termination or reduction of the 2006 term of supervised release. (*Id.* at 10).

### D. Final Supervised Release Revocation Hearing

At Defendant's second Final Supervised Release Revocation Hearing, the Probation Office recommended Defendant's terms of supervised release be revoked. (2006, ECF Nos. 75, 81; 2014, ECF No. 1747). Further, they recommended he be sentenced to 37 months of imprisonment for violating the terms of his 2006 supervised release and 24 months of imprisonment for violating the terms of the 2014 supervised release. (2006, ECF No. 75-1 at 4; 2014, ECF No. 1798-1 at 4). This Court did not revoke Defendant's 2006 term of supervised release, finding that Defendant never received written notice of the terms of his supervised release, and therefore notice was improper. (ECF No. 85). This Court did revoke Defendant's 2014 term of supervised release and sentenced him to 24 months imprisonment with no additional term of supervised release imposed (ECF No. 1818).

### II. LAW & ANALYSIS

### A. Notice of 2006 Term of Supervised Release

First, this Court will address the issue of what kind of notice is required to inform a Defendant that a term of supervised release is part of their sentence. Pursuant to 18 U.S.C. § 3583(f):

9

> "The court *shall* direct that the probation officer provide the defendant with a *written* statement that sets forth all conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required."

(emphasis added). Further, the first of a probation officer's duties is to:

> "[i]nstruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions."

18 U.S.C. § 3603(1). The purpose of these statutes is to "ensure that the defendant is notified of the conditions of supervised release," to avoid a situation in which the Defendant is sent back to prison "for violating conditions of the release that he had no way of knowing existed." *U.S v. Arbizu*, 431 F.3d 469, 471 (5th Cir. 2005).

The "ultimate goal of [18 U.S.C. § 3583(f)] is notice and guidance for the defendant." *U.S. v. Felix,* 994 F.2d 551-52 (8th Cir.1993). While the Sixth Circuit has yet to rule on this, "other circuit[s] that ha[ve] confronted this issue [hold] that the government's failure to provide the notice required by statutes does not limit the district court's authority to revoke supervised release where the defendant had *actual notice* of the release terms." *Arbizu*, 431 F.3d at 470 (emphasis added); *see also U.S. v. Ortega-Brito,* 311 F.3d 1136, 1138 (9th Cir. 2002) (holding that failure to provide a releasee with written notice of his conditions of supervised release, "will not automatically invalidate the revocation of his release upon a violation of such conditions" where releasee received actual notice); *U.S. v. Felix,* 994 F.2d 550, 551 (8th Cir.1993) (declining to impose a rule that failure to order or to provide a written statement automatically results in the inability of the sentencing court to revoke supervised release based on a violation of one of the conditions); *U.S v. Ramos-Santiago,* 925 F.2d 15, 17 (1st Cir. 1991) (despite failure to order written statement of conditions of supervised release, the "essentials" of the notice requirement were met by attaching the conditions of supervised release to the copies of the sentence sent to

both defendant and defense counsel); *U.S. v. Fleck*, 833 F. App'x 976, 977–78 (4th Cir. 2020) (Defendant's assertion that he did not have notice that he could not possess child pornography was frivolous where condition of supervised release prohibiting criminal activity was clearly delineated in original criminal judgment). Actual notice of the conditions of supervised release can occur when the terms of release were "clearly delineated in the original criminal judgment" (*U.S. v. Williams*, 691 F. App'x 758, 759 (4th Cir. 2017)) or where oral notice was provided at a sentencing hearing. *Felix*, 994 F.2d at 551. These courts reason that the rehabilitative purpose of supervised release would be undermined if a Defendant could commit banned conduct while on supervised release, and then "hide behind the government's failure to follow statutory notice procedures during sentencing." *Arbizu*, 431 F.3d at 471.

Defendant did receive actual notice of the terms of his 2006 supervised release through the 2006 judgment (2006, ECF No. 35) and orally at the 2007 sentencing hearing. (2006, ECF Doc. 44 at 28:21-25, 29:1-5 ("Upon release from imprisonment, the defendant shall serve a term of supervised release of five years . . . While on supervised release, the defendant shall not commit any federal, state or local crime. He is prohibited from possessing a firearm or other dangerous weapon. He shall not unlawfully possess any controlled substance.")). The text of 18 U.S.C. § 3583(f), however, is unmistakable in its expectation—"[t]he court *shall* direct that the probation officer provide the defendant with a *written* statement that sets forth all conditions to which the term of supervised release is subject." 18 U.S.C. § 3583(f) (emphasis added). When Congress uses the word "shall," it connotes a requirement unlike the word "may" which implies discretion. *Kingdomware Tech., Inc. v. U.S.*, 579 U.S. 162, 171-72 (2016); *Compare Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (recognizing that "shall" is "mandatory" and normally creates "an obligation impervious to judicial discretion"), *with U.S.*

11

*v. Rodgers*, 461 U.S. 677, 706 (1983) (explaining that when the word "may" is used in a statute, it "usually implies some degree of discretion"). To confirm these interpretations, courts typically look to the surrounding subsections of a statute for further evidence of Congress' intent. *Kingdomware Tech., Inc.*, 579 U.S. at 172. "[W]hen a statute distinguishes between "may" and "shall," it is generally clear that "shall" imposes a mandatory duty. *Id.* (citing *U.S. ex rel. Siegel v. Thoman*, 156 U.S. 353, 359-60 (1895). Like "shall", the word "written" is also considered so self-evident, that the Merriam-Webster Dictionary defines it as "made or done in writing." *Written*, Merriam-Webster's Dictionary (11th ed. 2020).

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose." *Milner v. Dept. of Navy*, 562 U.S. 562, 569 (2011) (quoting *Park N'Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)); *see also Dodd v. U.S.*, 545 U.S. 353, 357 (2005) (explaining that when interpreting statute, courts should presume "that [the] legislature says . . . what it means and means . . . what it says"). "A court endeavors to interpret statutes in light of the straightforward and commonsense meaning of the terms used within" and when a court "can discern an unambiguous and plain meaning from the language of a statute, the court's task is at an end." *U.S. v. Certain Land Situated in City of Detroit*, 633 F. 3d 418, 422 (6th Cir. 2011); *Cf. NetChoice, LLC v. Paxton*, 49 F.4th 439, 452–43 (5th Cir. 2022) (Oldham, J.) (noting that "[a]s always, we start with the original public meaning of the Constitution's text," rather than the multitude of directly relevant higher court precedents). While this Court acknowledges the practical implications of failing to provide a defendant written terms of their supervised release, failure to follow the letter of the law under 18 U.S.C. § 3583(f) cuts against Congress' constitutionally endowed legislative authority and unmistakable intent. *Hernandez v. Mesa*, 140

12

S.Ct. 735, 741 (2020) ("The Constitution grants legislative power to Congress; this Court and the lower courts, by contrast have only "judicial Power.") Additionally, there is extensive use of the word "may" throughout 18 U.S.C. § 3583. For example, the court "may include as part of the sentence a requirement that the defendant be placed on a term of supervised release" (§ 3583(a)); and "[t]he court may . . ." terminate a term of supervised release after one year, or "may" change the conditions of supervised release. *Id.* § 3583(e). Conversely, the authors of this statute chose the word "shall" when stating that the court direct the Probation Office to provide written notice of the terms of supervised release. *Id.* § 3583(f).

All of these factors demonstrate that this Court was statutorily required to provide Defendant written notice of the terms of his 2006 supervised release, per Congress' direction. Because Defendant never received written notice, this Court will **NOT REVOKE** Defendant's 2006 supervised release because notice was **IMPROPER**.

### B. Motion to Terminate or Reduce 2006 Supervised Release Sentence

Defendant also argues that his 5-year term of supervised release associated with his 2006 crack cocaine charge should be terminated or reduced. The Fair Sentencing Act of 2010 "legislatively modified the statutory range for crack cocaine convictions." *U.S. v. Beamus*, 943 F.3d 789, 791 (6th Cir. 2019) (per curiam); Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. It increased the amount of crack cocaine necessary to trigger the 10-year mandatory minimum sentence from 50 grams to 280 grams (21 U.S.C. § 841(b)(1)(A)(iii)), which would have made a difference for Defendant since he was in possession of 55.17 grams. (2006, ECF No. 44 at 20:15-21:8). The First Step Act of 2018 allowed courts retroactively to apply § 2(a) of the Fair Sentencing Act retroactively. First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222; *Beamus*, 943 F.3d at 791. There are two limits to eligibility:

defendants may not seek resentencing if either (1) their sentence was imposed or already modified under the Fair Sentencing Act of 2010, or (2) they lost a prior motion under the First Step Act "after a complete review of the motion on the merits." First Step Act § 404(c), 132 Stat. at 5222. Neither one of these limits applies to Defendant, who has never "submitted a motion under the First Step Act." (2006, ECF No. 79 at 10; 2014, ECF No. 1803 at 10). Therefore, his sentence is eligible for reduction under the First Step Act.

Defendants who already served their prison sentences and are serving post revocation of supervised release sentences are still eligible for a sentence reduction under the First Step Act. *Woods*, 949 F.3d at 936-37. "[P]ost-revocation penalties relate to the *original* offense[.]" *Johnson v. U.S.*, 529 U.S. 694, 701 (2000) (emphasis added). Further treating "revocation and reimprisonment as punishment for the violation of the conditions of supervised release" would raise "serious constitutional questions," such as double jeopardy concerns. *Id.* at 700; *see also U.S. v. Venable*, 943 F.3d 187, 194 (4th Cir. 2019) ("And given that [the defendant's] revocation sentence is part of the penalty for his initial offense, he is still serving his sentence for a 'covered offense' for the purposes of the First Step Act. Thus, the district court had the authority to consider his motion for a sentence reduction, just as if he were still serving the original custodial sentence."). Therefore, this Court has the authority to revoke Defendant's supervised release and impose an additional term of imprisonment, while simultaneously reducing Defendant's remaining term of supervised release and associated new term of imprisonment at its discretion to account for changes in the sentencing requirements for a crack cocaine offense.

Nothing in § 404(b) of the First Step Act, however, requires a court to reduce the sentence of an eligible defendant. *U.S. v. Foreman*, 958 F. 3d 506, 509 (6th Cir. 2020); *see* § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence

14

pursuant to [section 404(b)]."). Reduction in sentence is entirely discretionary. *Id.* The First Step Act does not prohibit "courts from considering the factors outlined in § 3553(a), which include the applicable sentencing guidelines range and other relevant information about the defendant's history and conduct" when deciding whether to reduce a sentence. *U.S. v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020); *See* First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Finally, the Supreme Court has determined that courts may consider post-sentencing conduct in assessing the § 3553(a) factors when considering whether to adjust a previously imposed sentence. *Pepper v. U.S*, 562 U.S. 476, 487–93 (2011). Although "*Pepper* dealt with plenary resentencing procedure, whereas the First Step Act § 404 in contrast only granted courts the power to modify sentences, such a distinction does not logically prevent courts from considering post-sentencing conduct in assessing the § 3553(a) factors during a . . . sentence-modification proceeding." *U.S. v. Allen*, 956 F.3d 355, 358 (6th Cir. 2020).

First, per federal statute, any term of supervised release imposed by a sentencing court is to run concurrently with any other term of supervised release imposed. 18 U.S.C. § 3624(e); *U.S. v. Skelton*, 68 F. App'x 605, 607 (6th Cir. 2003). Therefore, Defendant's two terms of supervised release would run concurrently, resulting in 5 total years of supervised release prior to any actions warranting revocation. Defendant's Motion requests only a reduction or termination of the 5-year term of supervised release resulting from Defendant's 2006 crack cocaine charge. (2006, ECF No. 79 at 10-12; 2014, ECF No. 1803 at 10-12). This Court must take into consideration the following factors when assessing a motion for reduction in sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need

15

to avoid unwarranted sentencing disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a).

This Court acknowledges and agrees with the Defendant's statement that the Fair Sentencing Act was meant to correct "misguided, unjust and racially motivated" statutory sentencing requirements. (2006, ECF No. 82 at 1, 2014, ECF No. 1807 at 1). Termination of supervised release, however, is a "discretionary decision that is only warranted in cases where the defendant shows changed circumstances—such as exceptionally good behavior." *U.S. v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002); *see also U.S. v. Lussier*, 104 F. 3d 32, 36 (2d Cir. 1997). While the history of this sentencing structure is a very important consideration, the Defendant has continued a pattern of serious criminal conduct since his first sentencing in 2007 that weighs heavily against him. (2006, ECF No. 81 at 7; 2014, ECF No. 1806 at 7). He pled guilty on a racketeering charge in 2014 as part of the Short North posse cases, and since being on supervised release was indicted on cocaine and fentanyl related charges as part of a drug trafficking ring in the Ohio state courts, tested positive for marijuana, left the district without permission, and moved addresses without notifying the Probation Office. (2006, ECF No. 61 at 5; 2014, ECF No. 1798-1 at 3).

Defendant demonstrates that he has not changed his behavior and has continued involvement with illegal drug possession and use. (*Id.*). Even if this Court were to exclude Defendant's pending state charges as a factor for consideration, Defendant has violated other terms of his supervised release sentences. Further, this Court has already admonished Defendant for his behavior during his 2017 sentencing, warning "[t]here's no reason, there is no reason, no excuse for you to transgress any further." (2014, ECF No. 1578 at 24:5-19). Although Defendant has served more than one year of supervised release, he has not shown that termination or

16

reduction of his sentence is "warranted by his conduct or is within the interest of justice." *Atkin*, 38 F. App'x at 198; *see also Woods*, 949 F. 3d at 938 (upholding district court's decision that felony crimes committed by defendant on supervised release and the "ongoing pattern of drug involvement and weapons possession indicated that the original sentence was not sufficient to promote respect for the law, protect the public, or adequately afford deterrence"). Defendant's conduct results in the § 3553(a) factors weighing against his Motion for Reduced Sentence. Therefore, this Court **DENIES** Defendant's Motion to Reduce Sentence.

### III.    CONCLUSION

For the reasons stated above, this Court holds that Defendant did not receive the statutorily required, written notice of his 2006 term of supervised release. Because notice was **IMPROPER**, this Court will **NOT REVOKE** Defendant's 2006 term of supervised release. Additionally, Defendant's Motion to Reduce Sentence is **DENIED** (2006, ECF No. 79; 2014 ECF No. 1803).

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
CHIEF UNITED STATES ~~DISTRICT~~ JUDGE

**DATED:  November 14, 2022**